# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**COMMONWEALTH LAND TITLE INSURANCE COMPANY**,

Plaintiff,

v.

**KCI TECHNOLOGIES, INC.** *et al.*,

Defendants.

Case No. 1:17-cv-01070 (TNM)

## <u>MEMORANDUM OPINION</u>

Plaintiff Commonwealth Land Title Insurance Company ("Commonwealth"), a title insurance company, seeks judgment against defendants KCI Technologies, Inc. ("KCI") and Wiles Mensch Corp. ("WMC"), both of which conducted surveys of a particular plot of land in Washington, D.C. under service contracts with land developer Infrastructure Capital Group, LLC or its affiliate ICG 16th Street Associates, LLC (collectively "ICG" or "Insured"). Commonwealth alleges that, because both surveyors were negligent in conducting the land surveys upon which it relied in issuing title insurance policies to ICG, the Defendants are liable for the payout it made under ICG's title claim seeking reimbursement for additional costs incurred as a result of the inaccurate surveys. The Defendants have filed separate motions to dismiss for failure to state a claim. As jurisdiction and venue is proper in this Court,[1] and upon consideration of the pleadings, relevant law, related legal memoranda in opposition and in support, and the entire record therein, I find that the statute of limitations has run on the

---

[1] *See* 28 U.S.C. §§ 1332, 1391. This matter was removed from D.C. Superior Court pursuant to 28 U.S.C. §§ 1441, 1446.

Plaintiff's claims. Accordingly, the Defendants' motions will be granted, and the Complaint will be dismissed with prejudice.

## I.    BACKGROUND

At issue in this case are four different land surveys conducted on the same plot of land between 2006 and 2014; two of which were conducted by KCI and two of which were conducted by WMC. In 2006, ICG purchased the land lot at 900 16th Street NW, Washington, D.C. for the purpose of constructing a new commercial office building. Compl. ¶¶ 4-7. ICG hired KCI to conduct and produce a land title survey. *Id.* ¶ 8; *see also id.* Ex. A ("KCI Professional Services Agreement" dated June 22, 2006).[2] KCI's 2006 survey did not identify any encroachment on the land, and contained a "Surveyor's Certification" that stated the survey was made in accordance with the "Minimum Standard Detail Requirements for ALTA/ACSM Land Title Surveys." *Id.* Ex. B ("KCI 2006 Survey" signed April 10, 2007). Commonwealth alleges that it relied upon this survey to issue a title insurance policy to ICG ("2007 Title Policy"). *Id.* ¶ 13.

In December 2012, ICG hired WMC to conduct a Boundary, Topographic and Utility Survey ("WMC 2012 Survey") which identified a party wall that encroached on the property by two to three inches. *Id.* ¶¶ 15-16. In May 2013, WMC re-conducted the same survey ("WMC 2013 Survey") and stated to ICG that the encroachment was four inches. *Id.* ¶ 19. ICG

---

[2] KCI challenges the Plaintiff's standing based on the fact that its original contract was with Infrastructure Capital Group, LLC, an entity not named in this matter. The Plaintiff has declared that Infrastructure Capital Group, LLC and ICG 16th Street Associates, LLC are related entities, and that the former assigned all rights and claims arising from its agreement with KCI to the Plaintiff. *See* Mem. of P. & A. in Opp. to KCI's Mot. to Dismiss ("Opp. to KCI Mot. to Dismiss") 4, ECF No. 14; *id.* Ex. 1 ¶¶ 2-3. For purposes of these motions to dismiss, where I accept as true all well-pled factual allegations, I treat the Plaintiff as the assignee of all rights and claims arising from Infrastructure Capital Group, LLC's contract with KCI.

subsequently again commissioned KCI to conduct an ALTA/ACSM Land Title Survey, which was issued in February 2014 ("KCI 2014 Survey") and identified no encroachment. *See id.* ¶ 21; Compl. ¶¶ 77-79. The survey included a certification similar to the one made in the KCI 2006 survey. *See id.* ¶ 22; *see also id.* Ex. H. Commonwealth alleges that it relied upon the KCI 2014 Survey to issue a title insurance policy to ICG ("2014 Title Policy"). *Id.* ¶ 24.

On March 24, 2014, the architectural and construction company hired by ICG reported to ICG that the encroachment was actually 12 inches. *Id.* ¶ 27. In order to construct the building as intended, ICG decided to demolish the encroachment, incurring $2,666,379 in demolition costs and payment of a partial delay penalty to the building's main tenant. *Id.* ¶¶ 28, 36. On September 17, 2014 and November 17, 2014, ICG tendered claims on the 2007 and 2014 title policies, respectively, to Commonwealth, which accepted coverage and made a loss payment to ICG under the 2007 policy. *Id.* ¶¶ 31, 33-35; Mem. of P. & A. in Opp. to WMC's Mot. to Dismiss ("Opp. to WMC Mot. to Dismiss") 2 n.1, ECF No. 13. Commonwealth claims that it incurred $1,042,025.31 due to the loss payment made to ICG and expenses. *Id.* ¶ 35.

On March 23, 2017, Commonwealth brought suit against KCI and WMC, alleging seven causes of action. Certified Copy of Transfer Order and Docket Sheet ("Superior Court Docket Sheet"), ECF No. 10. Of the seven counts, one count is against WMC and six counts are against KCI. Compl. 7-12. As against WMC, Commonwealth alleges that, as the assignee of ICG's rights and claims, it is subrogated to all claims that ICG had against WMC (Count One). *Id.* ¶ 38. Commonwealth seeks to recover ICG's costs of $2,666,379 for WMC's breach of contract for failing to take notice of a 12 inch encroachment. *Id.* ¶ 41.

As against KCI, Commonwealth alleges that KCI's 2006 survey, in failing to notice a 12 inch encroachment on the property, was conducted negligently (Count Two) and negligently

represented the true state of the property (Count Three).  *Id.* ¶¶ 43-55.  Commonwealth seeks

judgment against KCI for $1,042,025.31, the amount incurred by Commonwealth as a result of

its insuring and paying out a title claim to ICG.  *Id.*  Commonwealth also alleges these same

claims as pertaining to KCI's 2014 survey (Counts Five and Six) and seeks the same judgment.

*Id.* ¶¶ 60-74.  Last, Commonwealth alleges that it is subrogated to all claims that ICG has against

KCI by virtue of ICG's assignment of its rights and claims to Commonwealth.  *Id.* ¶¶ 57, 76.  It

makes breach of contract claims against KCI with respect to the 2006 and 2014 surveys (Counts

Four and Seven, respectively).  *Id.* ¶¶ 56-59, 75-80.

KCI timely removed this matter to this Court; Not. of Removal, ECF No. 1; and both

KCI and WMC have filed motions to dismiss for failure to state a claim upon which relief can be

granted.  Def. KCI Technologies, Inc.'s Mot. to Dismiss ("KCI Mot. to Dismiss"), ECF No. 7;

Def. Wiles Mensch Corp.'s Mot. to Dismiss ("WMC Mot. to Dismiss"), ECF No. 5; *see also*

Def. KCI Technologies, Inc.'s Supp./Revised Mot. to Dismiss ("KCI Supp. Mot. to Dismiss"),

ECF No. 19.[3]

## II.  LEGAL STANDARD

A party may move to dismiss a complaint on the ground that it "fail[s] to state a claim

upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint must contain sufficient

factual allegations that, if true, "state a claim to relief that is plausible on its face."  *Bell Atl.*

---

[3]  While KCI's supplemental motion to dismiss was filed without leave of Court, I find that the
Plaintiff was not prejudiced by its filing and accordingly will consider KCI's arguments.  In its
supplemental motion, KCI raises a statute of limitations defense which applies across all of
Commonwealth's claims, *i.e.*, as against both WMC and KCI.  *See* KCI Supp. Mot. to Dismiss
¶¶ 6-7.  Commonwealth previously responded to this argument in its opposition to WMC's
motion to dismiss and did so again in its opposition to KCI's supplemental motion to dismiss.
*See* Opp. to WMC Mot. to Dismiss 5-9; Mem. of P. & A. in Opp. to KCI's Supp./Revised Mot.
to Dismiss ("Opp. to KCI Supp. Mot. to Dismiss"), ECF No. 20.

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In evaluating a motion to dismiss pursuant to Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all reasonable factual inferences drawn from well-pled factual allegations. *See In re United Mine Workers of Am. Emp. Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994). In addition, "[i]n determining whether a complaint fails to state a claim, [the court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Hurd v. District of Columbia Gov't*, 864 F.3d 671, 678 (D.C. Cir. 2017) (quoting *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)).

## III.  ANALYSIS

KCI and WMC each argue that Commonwealth's causes of action are time-barred under D.C. law by the three-year statute of limitations, and the Plaintiff does not dispute that this is the applicable statute of limitations. WMC Mot. to Dismiss. 8; Opp. to WMC Mot. to Dismiss 5; KCI's Reply to Pl.'s Opp. to Mot. to Dismiss 2, ECF No. 18; KCI Supp. Mot. to Dismiss ¶ 6; Opp. to KCI Supp. Mot. to Dismiss 4; *see also* D.C. Code Ann. § 12-301(7)-(8). Because I find that Commonwealth did not bring suit until after the statute of limitations had run, and that D.C.'s "discovery rule" is inapplicable to the circumstances as alleged, Commonwealth's claims are time-barred.

## A. The Statute of Limitations Has Run

The statute of limitations begins to run "from the time the right to maintain the action accrues." D.C. Code Ann. § 12-301.[4] Generally, an action accrues when an injury occurs. *Shehyn v. D.C.*, 392 A.2d 1008, 1013 (D.C. 1978). Here, all of Commonwealth's claims—both in contract and in tort—focus on the alleged deficient performance of four land surveys: the KCI 2006 Survey, the WMC 2012 Survey, the WMC 2013 Survey, and the KCI 2014 Survey. In each of these cases, the alleged injury occurred when the surveying entity tendered survey reports that failed to notice a 12 inch encroachment on the property. *See* Compl. ¶¶ 40-41, 45, 70. The statute of limitations, then, began to run upon the tendering of the survey results. This means the statute of limitations started running for the KCI 2006 Survey on July 12, 2006. *See id.* ¶ 9. For the WMC 2012 Survey, the statute of limitations began running on December 2, 2012. *See id.* ¶ 15. For the WMC 2013 Survey, the clock started to tick on May 2, 2013. *See id.* ¶ 19. Last, the KCI 2014 Survey was delivered on February 20, 2014, marking the start of the period during which suit related to that survey should have been brought. *See id.* ¶ 21. The Plaintiff's complaint was not filed until March 23, 2017, which is beyond the three-year period triggered by each survey—and in all but the last case, well beyond the three-year period. *See* Superior Court Docket Sheet. Consequently, all claims pertaining to the negligent performance of these surveys are time-barred.

---

[4] Because this case is before me based on the Court's diversity jurisdiction, I must apply D.C. law as authoritatively construed by the D.C. Court of Appeals. *Novak v. Capital Mgmt. and Dev. Corp.*, 452 F.3d 902, 907 (D.C. Cir. 2006) ("[T]he *Erie* doctrine also applies to the District of Columbia.").

### B. The Discovery Rule Does Not Apply In This Case

The Plaintiff, however, urges application of the "discovery rule," which the D.C. Court of Appeals has applied in certain instances where an injury "was not readily apparent and indeed might not become apparent for several years after the incident causing injury had occurred." *Ehrenhaft v. Malcolm Price, Inc.*, 483 A.2d 1192, 1201 (D.C. 1984) (using the nomenclature "discovery exception"). When applied, the discovery rule effectively tolls the statute of limitations to "when the plaintiff knows or through the exercise of due diligence should have known of the injury." *Burns v. Bell*, 409 A.2d 614, 617 (D.C. 1979).

Application of the discovery rule, however, is not universal. Though the rule applies in actions involving medical malpractice and legal malpractice, where sophisticated professionals may take advantage of lay clients without the clients ever being aware of the wrong; *see id.*; *Weisberg v. Williams, Connolly and Califano*, 390 A.2d 992, 996 (D.C. 1978); *Ehrenhaft*, 483 A.2d 1201 n.15; the D.C. Court of Appeals has refused to validate broad application of the rule in other contexts, instead opting for consideration on a "case by case basis." *Id.* at 1204 (citing *Poffenberger v. Risser*, 431 A.2d 677, 681 (Md. 1981) (Rodowsky, J., concurring)). In conducting case-specific analyses, the D.C. Court of Appeals has applied the exception in at least one instance involving the design and construction of a home; *Ehrenhaft*, 483 A.2d at 1202; but refused to do so in another case involving a commercial construction dispute. *Capitol Place I Assocs. L.P. et al., v. George Hyman Constr. Co.*, 673 A.2d 194, 200 (D.C. 1996). In *Capitol Place*, the court "[a]ssumed without deciding that the discovery rule may be applicable in the context of commercial construction disputes," but found that the facts before it did not warrant application of the rule. *Id.* at 200. Here, I similarly assume without deciding that the discovery rule may be applicable to the alleged negligent survey of land in a commercial real estate

transaction, and find that the facts do not justify application of the rule to toll the running of the statute of limitations on Commonwealth's claims.

In *Ehrenhaft*, the D.C. Court of Appeals looked to "the policy judgments that gave rise to the discovery rule in the first place" and concluded that because the plaintiff was a lay person, the deficiency in design or construction was latent, the equities favored protecting the plaintiff as weighed against the potential prejudice to the defendant, and judicial economy would be served, the rule should apply. *Capitol Place*, 673 A.2d at 199; *Ehrenhaft*, 483 A.2d at 1202-04; *see also Woodruff v. McConkey*, 524 A.2d 722, 727 (D.C. 1987) (describing the test as having four factors). In *Capitol Place*, the court assessed that the plaintiff was a sophisticated owner, the "early signs of defect were abundant," the record "cries out with knowledge on the part of the [plaintiff] that a cause of action against the [defendant] was viable," and the defendant admitted that it knew of some of the problems. 673 A.2d at 200. It therefore concluded that the discovery rule did not apply. *Id.*

The facts at bar are more akin to *Capitol Place* than *Ehrenhaft*. As to the first factor, the "justifiable reliance by consumers on the professional skills of those hired to perform the work," *Woodruff*, 524 A.2d at 737, the Plaintiff is in a similar posture to the plaintiff in *Capitol Place*, which consisted of principals in a commercial property development and management firm. *See* 673 A.2d at 196. ICG is a sophisticated player whose business is in the development of commercial properties. *See* Opp. to WMC Mot. to Dismiss 7. Although the Plaintiff avers that ICG was not a sophisticated entity insofar as it was not capable of conducting professional land surveys, Commonwealth's interpretation is too narrowly defined. The facts as pled show that ICG purchased the property with the intent to construct a new commercial office building on the site and that the 2007 Title Policy provided $9 million in insurance. Compl. ¶¶ 5-7, *id.* Ex. C.

Clearly, this was not a lay homeowner seeking to build or renovate his own residence; this was a seasoned real estate developer seeking to build and profit commercially. The same is true of Commonwealth: rather than being a private citizen who may occasionally, or rarely, engage in these types of transactions, Commonwealth is in the business of regularly providing title insurance in connection with real estate transactions. The Plaintiff has not cited any authoritative case law in which the discovery rule tolled the statute of limitations for a plaintiff engaged in professional practice rather than being a lay person, and the apparent and notable lack of case law on this point militates against extending the rule to the circumstances of this case.

The second factor, the latency of the deficiency, does not save the Plaintiff's claims. *See Woodruff,* 524 A.2d at 737. Commonwealth admits that the amounts incurred for which it seeks redress pertain only to the 2007 policy that it issued to ICG; Opp. to WMC Mot. to Dismiss 2 n.1 ("Plaintiff informs the parties that the loss payments were made pursuant to the 2007 policy and not the 2014 policy."). Consequently, the relevant survey for which damages can be awarded is the KCI 2006 Survey. Assuming that the deficiency—the allegedly negligent performance of the survey—was latent, the Plaintiff was put on notice of the defect when the later surveys indicated that the KCI 2006 Survey was erroneous. For the KCI 2006 Survey, this means that its defect was revealed when the WMC 2012 Survey identified that there was, in fact, an encroachment on the property. Thus, even assuming that the deficiency was latent, this would not bring the Plaintiff's complaint within the statute of limitations.

The third factor, the balance of the Plaintiff's interests against the prejudice to the Defendants, also weighs in favor of the Defendants. *See Woodruff*, 524 A.2d at 727. Commonwealth alleges that ICG and it and were not aware of the 12 inch encroachment until March 2014, 2014 and September 17, 2014, respectively, and that the decision to demolish the

encroachment was made in March and April of 2014.  Compl. ¶¶ 29, 46-47.  But all of these dates were sufficiently within the statute of limitations that began running before—or by latest—May 2, 2013, when the WMC 2013 Survey was delivered to ICG.  *See id.* ¶ 19.  For the Plaintiff to have waited until 2017—over a decade after KCI's original survey—to bring suit undermines the principles of finality and fairness underlying the purpose of statutes of limitations and prejudices the Defendants.  *See Farris v. Compton*, 652 A.2d 49, 58 (D.C. 1994) ("Statutes of limitations are responsive not only to evidentiary concerns, . . . but also to considerations of 'repose,' *i.e.*, 'the potential defendant's interest in security against stale claims').[5]

The last factor, judicial economy, does not much favor either party, but may lean towards the Defendants.  *See Woodruff*, 524 A.2d at 728 ("This factor militates [in the defendant's favor] because of the court's preference to adjudicate more timely complaints.").[6]  In taking all factors into consideration as a whole, and because the Plaintiff is "a 'sophisticated owner' who had received early warning of the defects of which [it] belatedly complained," the discovery rule is inapplicable to Commonwealth's claims, even if it may properly apply in other commercial property contexts.  *See Jacobsen v. Block*, 744 A.2d 1028, 1031 (D.C. 2000) (citing *Capitol Place*, 673 A.2d at 200).

---

[5]  *See also Developments in the Law Statute of Limitations*, 63 Harv. L. Rev. 1177, 1185 (1950) ("The primary consideration underlying [statutes of limitation] is undoubtedly one of fairness to the defendant.  There comes a time when [it] ought to be secure in [its] reasonable expectation that the slate has been wiped clean of ancient obligations, and [it] ought not to be called on to resist a claim when 'evidence has been lost, memories have faded, and witnesses have disappeared.'").

[6]  *Cf. Capitol Place*, 673 A.2d at 200 (citation omitted) ("The discovery rule does not [] permit a plaintiff who has information regarding a defendant's negligence, and who knows that she has been significantly injured, to defer institution of suit and wait and see whether additional injuries come to light.").

**C. Even If the Discovery Rule Applied, Commonwealth's Claims Regarding the KCI 2006 Survey are Time-Barred**

Even if the discovery rule applied, Commonwealth would not be able to recover against KCI as its claims regarding the KCI 2006 Survey are time-barred. As previously stated, the discovery rule tolls the ticking of the statute of limitations to "when the plaintiff knows or through the exercise of due diligence should have known of the injury." *Burns v. Bell*, 409 A.2d 614, 617 (D.C. 1979). Commonwealth was on notice of the alleged negligence of the KCI 2006 Survey by the time the WMC 2012 Survey was delivered in December 2012 (identifying a two to three inch encroachment), and in any event certainly by the time the WMC 2013 Survey was delivered in May 2013 (identifying a four inch encroachment). This means that, under the discovery rule, Commonwealth had until May 2016 at the very latest to bring suit relating to the KCI 2006 Survey.

Although Commonwealth argues that it was the specific revelation of a 12 inch encroachment in March and September 2014 that led to the damages in this case, Opp. to KCI Supp. Mot. to Dismiss 2, this argument is unpersuasive. The facts pled show that ICG knew, via the WMC 2012 and 2013 surveys, that there was indeed an encroachment on the property that the KCI 2006 survey failed to identify. Compl. ¶¶ 15, 19. The WMC 2013 survey in particular, which increased the size of the encroachment from two or three inches to four inches, indicated that prior surveys were unreliable in identifying and measuring the magnitude of the encroachment. This is sufficient to provide inquiry notice of the injury alleged in this case. *See Drake v. McNair*, 993 A.2d 607, 617 (D.C. 2010) ("The critical question in assessing the existence . . . of injury notice is whether the plaintiff exercised reasonable diligence under the circumstances in acting or failing to act on whatever information was available to him."); *see*

*also Kubicki on behalf of Kubicki v. Medtronic, Inc.*, No. 12-cv-734, 2018 WL 707428 at *16
(D.D.C. Feb. 5, 2018) ("Put another way: In every case, the plaintiff has a duty to investigate
matters affecting her affairs with reasonable diligence under all of the circumstances."). The
circumstances here are again akin to those in *Capitol Place*. In *Capitol Place*, the plaintiff was
consistently made aware, over the course of several years, of issues with the building's
construction. 673 A.2d at 196. Shortly after construction, there were indications of water
infiltration; and on at least three other instances over the next four years, the plaintiff received
reports of water leakage. *Id.* The court ruled that these instances should have prompted the
plaintiff to act sooner, and not wait until after the plaintiff "underst[oo]d the full range of
problems." *Id.* at 200. Similarly, here, the Plaintiff was on notice by virtue of the contradicting
and inconsistent surveys that it should act with reasonable diligence to investigate and take
action on the encroachment issue. Its failure to do so, even assuming, *arguendo*, that the
discovery rule applies, would doom its claims pertaining to the KCI 2006 Survey.[7]

**D. In the Absence of the Discovery Rule, Commonwealth's Claims are Time-Barred
or Fail to State a Claim**

All of Commonwealth's claims brought as ICG under subrogation (Counts One, Four,
Seven) must be dismissed because, in the absence of the discovery rule's tolling function, the
statute of limitations for these counts began running on July 12, 2006; December 2, 2012; and

---

[7] As it pertains to Commonwealth's subrogation claims (as ICG) against WMC, tolling the
statute of limitations until the discovery of the 12 inch encroachment would mean that the
complaint was filed with one day to spare within the statute of limitations period. *Compare*
Superior Court Docket Sheet (complaint filed March 23, 2017) *with* Compl. ¶ 46 (discovery of
the 12 inch encroachment by ICG on March 24, 2014). However, in light of my determination
that the discovery rule does not apply to Commonwealth, either in its own right or as subrogee to
ICG, Commonwealth's claims against WMC cannot proceed. See *supra* Section III.A.

May 2, 2013, respectively. These periods had all expired by the time Commonwealth filed its complaint in the D.C. Superior Court on March 23, 2017.

Further, Commonwealth's claims with respect to the KCI 2006 Survey (Counts Two and Three) must be dismissed as the statute of limitations expired for those claims on July 12, 2009. See *supra* Section III.A.

Last, Commonwealth's claims with respect to the KCI 2014 Survey (Counts Five and Six) must be dismissed as the statute of limitations expired as pertaining to the KCI 2014 Survey on February 20, 2017. *See id.* Commonwealth further fails to state a claim upon which relief can be granted as it has not pled that it suffered any harm in connection with the KCI 2014 Survey, since it admits that the loss payment it made to ICG was under the 2007 Title Policy, which was issued in reliance on the KCI 2006 Survey. *See* Compl. ¶ 35 ("Plaintiff, in turn, satisfied the Title Claim by making a loss payment . . . and incurred expenses . . . for a total sum of $1,042,025.31."); *id.* 10-11 (seeking $1,042,025.31 each for Counts Five and Six as the damages incurred relating to the KCI 2014 Survey); Opp. to WMC Mot. to Dismiss 2 n.1 ("Plaintiff informs the parties that the loss payments were made pursuant to the 2007 policy and not the 2014 policy.").

## IV.  CONCLUSION

For the foregoing reasons, the Defendants' motions to dismiss will be granted and the Complaint is hereby dismissed with prejudice. A separate order will issue.

Dated: March 13, 2018

TREVOR N. MCFADDEN
United States District Judge

13